## LAFAYETTE CLUB v. FRANKLIN R. WRIGHT.
## SAME v. GREELEY AND MARGARET L. LADD.[1]

March 5, 1937.

Nos. 31,074, 31,075, 31,076.

*E. E. Eder,* for appellants.
*Cox, Weeks & Kuhlman,* for respondent.

STONE, JUSTICE.

Three cases, consolidated for trial below and on this appeal, wherein plaintiff seeks to recover delinquent dues from defendants as alleged members. The decision below going against defendants, they appeal from the orders denying their motions for amended findings or a new trial. The cases were heard upon an agreed statement of facts.

Plaintiff is a nonprofit, nonstock corporation owning and maintaining a country clubhouse and golf course on the shores of Lake Minnetonka. It was recently here in a similar case. See Lafayette Club v. Roberts, 196 Minn. 605, 265 N. W. 802. The three present defendants, none of them then having any unpaid dues or other delinquencies, tendered their unconditional resignations as members

[1]Reported in 271 N. W. 702.

in March, 1934. Plaintiff's board of governors rejected the resignations. These suits followed on the claim that defendants, notwithstanding, remained members of plaintiff.

It is provided by section VII of plaintiff's articles of incorporation that "the corporation shall prescribe in its by-laws the terms and conditions under which a member may resign or transfer his or her membership and the causes for forfeiture of membership and the dismissal or expulsion of members and the proceedings necessary to be taken therefor." In an attempt to implement that declaration, the following by-law was passed: "Any member may resign his membership by submitting his or her resignation in writing to the Secretary of the Board of Governors, but the same shall not terminate his or her membership or relieve him or her from any of his or her obligations under his or her contract of membership until the resignation is accepted by resolution of the Board of Governors duly passed by the vote of a majority of the members of the Board of Governors."

It will be observed that the charter provision concerning resignations declares that "the terms and conditions" under which a member may resign shall be fixed in a by-law. The only by-law attempting to meet that requirement, the one just quoted, falls far short of fixing such "terms and conditions." It simply delegates the whole thing to the uncontrolled discretion of the board of governors. Thereunder, the board may impose onerous conditions upon one resignation and very different and less onerous conditions upon another tendered at the same time. In other words, there may be any amount of unreasonable discrimination without violation of the by-law. That sort of thing was not intended by the charter authorization for the fixing of "the terms and conditions" of resignation through by-laws. There is no suggestion that it has been or will be attempted. That aids plaintiff not at all, for we must judge the by-law granting uncontrolled power to the governors by what may be, rather than what has been, done thereunder.

The conditions sought to be imposed in this case were payments, by the men seeking to resign, of a resignation fee of $250, and by

the women, $150. There is no express finding to aid us upon the fact question of the reasonableness of the payments sought to be exacted. Assuming that the corporation had power to exact them within limits of reason and that the payments demanded from defendants were only their reasonable contribution to the existing debt of plaintiff, we must yet hold that for the indicated failure of the corporation to fix, in the manner indicated by its own charter, the "terms and conditions" to be complied with by members seeking to resign, it has no cause of action against these defendants, whose resignations are otherwise unquestioned.

We do not forget that, although no "terms and conditions" were fixed by by-law as required by the charter, plaintiff's board of governors in October, 1933, passed the following resolution:

"The consideration for the release of members from any further obligation to the Club, on the estimated possible proportionate share of the obligation of members on the indebtedness of the Club, be fixed tentatively at $250.00 for men and $150.00 for women plus the payment by an individual member of all unpaid charges, the proceeds from which shall be held in a reserve for application on the Club's bank loan."

The absence of a by-law of the kind called for by the articles is, in our judgment, alone fatal to plaintiff's case. Were it otherwise, there would yet be some difficulty in sustaining a charge, the payment of which was condition precedent to a resignation, "fixed tentatively" and without any fixed and just proportion to the financial condition of the corporation at the time being. Members resigning from such corporation abandon the right they otherwise have to share in its property on liquidation. That is something to be considered in the case of resignation. The method here attempted to compel contributions from resigning members, in addition to the dues and other charges paid during their membership, is in the nature of an assessment. It cannot be made without the requisite charter authority. Jackson v. Minnetonka Country Club, 166 Minn. 323, 207 N. W. 632. Here we think the corporation has the authority, but that its attempted exercise was so far out of

line with the controlling charter provisions as to be without effect as against these defendants.

Orders reversed.

MR. CHIEF JUSTICE GALLAGHER, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.